IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BOBBY WAYNE WALDROP, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:08-CV-515-WKW [WO] |
| | ) | |
| RICHARD ALLEN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

Bobby Wayne Waldrop, an Alabama inmate sentenced to death, seeks relief from that sentence in this habeas corpus proceeding. (*See* Doc. # 1.) Currently before the court is Mr. Waldrop's motion (Doc. # 30) for an evidentiary hearing to admit evidence regarding his trial counsel's alleged inadequate assistance. Because Mr. Waldrop has not met the requisite standard for such a hearing, his motion is due to be denied.

## I. BACKGROUND

On August 6, 1999, Mr. Waldrop was convicted by the Circuit Court of Randolph County, Alabama, of the murder of his grandparents, Sherrell and Irene Prestridge.[1]

---

[1] Because this opinion concerns only whether an evidentiary hearing should be held, the facts of the crime will be discussed only as relevant to the analysis of that question. The Alabama Court of Criminal Appeals recited the facts of the case in considerable detail. *See Waldrop v. State*, 859 So. 2d 1138, 1144-45 (Ala. Crim. App. 2000). Summarized, Waldrop and his wife Clara resided with Waldrop's grandparents. The grandfather had heart and hip problems, and the grandmother was diabetic, bedridden and blind. Waldrop argued with his grandfather about money, and began to stab his grandfather while his grandmother screamed. Eventually, Waldrop and his wife inflicted 43 stab and cut wounds on the grandfather, and 38 stab and cut wounds on the grandmother. Before she was mortally wounded, the grandmother told Waldrop she loved him. After the grandfather was mortally wounded, Waldrop's wife, at Waldrop's instruction, took the grandfather's wallet from his body.

Although the jury recommended, by a vote of 10-2, that Mr. Waldrop be sentenced to life imprisonment, the trial judge overruled the recommendation and sentenced Mr. Waldrop to death. (Doc. # 30, at 3-4.) On direct appeal, the Alabama Court of Criminal Appeals initially remanded to the trial court for the issuance of a new sentencing order, and then affirmed both the conviction and sentence of death. *Waldrop v. State*, 859 So. 2d 1138 (Ala. Crim. App. 2000) (*Waldrop I*). The Supreme Court of Alabama affirmed the decision of the Court of Criminal Appeals. *Ex parte Waldrop*, 859 So. 2d 1181 (Ala. 2002), *cert. denied*, *Waldrop v. Alabama*, 540 U.S. 968 (2003) (*Waldrop II*). Waldrop then sought postconviction review in state court. The state trial court's denial of relief was affirmed by the Court of Criminal Appeals, and the Supreme Court of Alabama declined to review that decision. *Waldrop v. State*, 987 So. 2d 1186 (Ala. Crim. App. 2007) (*Waldrop III*). Having exhausted his avenues of relief in state court, Waldrop timely sought federal habeas corpus relief in this court, pursuant to 28 U.S.C. § 2254. The issue to be decided in this opinion concerns the manner in which the state trial court conducted the hearing for postconviction relief, as filtered through the Alabama Court of Criminal Appeals' opinion on appeal from that hearing[2]

## II.  STANDARD OF REVIEW

Because Mr. Waldrop filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "this case is governed by the provisions of 28 U.S.C. § 2254 as modified by the Act." *Valle v. Sec'y for Dep't of*

---

[2] The parties and state courts sometimes refer to this proceeding as a "Rule 32 hearing," in reference to Alabama Rule of Criminal Procedure 32.

*Corr.*, 459 F.3d 1206, 1211 (11th Cir. 2006). With respect to a legal issue, if the state court

has adjudicated a claim on its merits, habeas relief may be granted only if the state court

decision was contrary to, or involved an unreasonable application of clearly established law

as determined by the Supreme Court of the United States. § 2254(d)(1). Relief may not be

granted on the basis of an issue of fact unless the state court's adjudication "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." § 2254(d)(2). The state court's factual findings are

presumed correct, and the petitioner must rebut them by clear and convincing evidence.

§ 2254(e)(1).

As Section 2254(d)(2)'s reference to "the evidence presented in the State court

proceeding" implies, a federal habeas court cannot ordinarily hold an evidentiary hearing to

admit additional evidence about a claim if the petitioner "failed to develop the factual basis

of [the] claim in State court." § 2254(e)(2). If a petitioner has not been diligent in

developing the factual basis for his claim in state court, he may obtain a federal evidentiary

hearing only if he meets the narrow exceptions in subsections 2254(e)(2)(A) and (B).[3] *See*

*Williams v. Taylor*, 529 U.S. 420, 437 (2000); *Valle*, 459 F.3d at 1216; *Breedlove v. Moore*,

279 F.3d 952, 959-60 (11th Cir. 2002). As the Eleventh Circuit recently explained:

> [T]he question of whether a petitioner must satisfy § 2254(e)(2)'s requirements
> turns on whether the petitioner or his counsel were diligent in developing the
> record in the state habeas proceedings. If so, a federal court may grant an

---

[3] Waldrop does not claim he meets the requirements for this exception, but rather that he was diligent in developing the facts in the state court.

evidentiary hearing without further regard for the provisions of § 2254(e)(2).
If not, § 2254(e)(2)'s requirements must be met.

*Ward v. Hall*, 592 F.3d 1144, 1160 (11th Cir. 2010).  Still, if "'the proffered evidence would

not affect the resolution of the claim,'" no hearing need be held.  *Valle*, 459 F.3d at 1216

(quoting *Bolender v. Singletary*, 16 F.3d 1547, 1555 n.9 (11th Cir. 1994)).

For purposes of federal review, the relevant state court decision "is the last reasoned

state court decision."  *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citing *Ylst*

*v. Nunnemaker*, 501 U.S. 797, 804-06 (1991)).

## III.  DISCUSSION

Waldrop seeks a hearing in order to present two types of evidence not permitted by

the state habeas court: first, the expert testimony of a psychologist and social worker (Doc.

# 30, at 7, 11), and second, testimony about his family life and childhood that the state court

barred as hearsay.  (Doc. # 30, at 13.)

### A.  State Rule 32 Trial Court Proceedings

Waldrop argues that he exercised due diligence in attempting to introduce the factual

predicate for the relevant ineffective assistance habeas claim, but was unable to do so

because the state habeas trial court made "arbitrary and erroneous rulings" preventing him

from introducing relevant testimony from a psychiatrist and social worker.  (Doc. # 30 at 2.)

To evaluate the Alabama Court of Criminal Appeals' treatment of this claim, it is first

necessary to recite the proceedings in the state habeas trial court in some detail.

The state habeas proceedings began with Waldrop's April 23, 2004 filing of a Petition

for Relief from Judgment in the state habeas trial court.  (R-52.)  That Petition was 61 pages

long and contained relatively detailed statements of each of Waldrop's grounds for relief

from both his conviction and the sentence of death.  Section I of the Petition was entitled

"Mr. Waldrop was denied effective assistance of counsel . . . because counsel did not

adequately investigate evidence critical to his defense."  (R-52 at 4 (capitalization removed)).

This section contains six subsections denominated with the letters A through F.  Some

subsections, such as D, were given headings explicitly reflecting that they concerned either

the guilt or penalty phase of Waldrop's trial.  (R-52 at 9 ("Trial Counsel Did Not Adequately

Investigate . . . Mr. Waldrop's Penalty Phase Defense.").)  Subsection I.D. contained lengthy

allegations regarding trial counsel's alleged failures to investigate factual evidence relevant

to the penalty phase, but did not make claims concerning failure to call expert witnesses.

Subsections E and F were titled less clearly than subsection D.  Subsection E's

heading was "Counsel Did Not Investigate Mental Health Evidence" (R-52 at 31), and

subsection F's was "Counsel Did not Seek the Assistance of an Independent Psychologist,

Social Worker, and Mitigation Expert."  (R-52 at 31.)  The text of subsection E, which

consists of only one paragraph, clarifies that it relates to both the guilt and penalty phases of

the trial, and is based on trial counsel's alleged failure to discover facts about Waldrop's

mental health history by speaking to his family members.  Subsection F is lengthier,

containing 19 paragraphs.  The first states that a "psychologist would have testified during

the guilt/innocence phase . . . and provided penalty-phase testimony." (R-52, at 31-32.)

Subsequent paragraphs give justifications for the need for a psychologist that appear to relate

to both phases without clear delineation. The need for a social worker and mitigation expert

is not addressed until the final paragraph of this subsection, which states that they would be

relevant to the penalty phase of the trial. (R-52, at 34.) Sections II and III of the Petition

explicitly relate to the guilt and penalty phases, respectively. (R-52 at 34, 43.) Finally,

Sections IV, V, and VI concerned alleged errors during *voir dire*, withholding of evidence

by the state, and the trial judge's bias. (R-52 at 50, 57, 58.)

The state answered Waldrop's Petition. (R-53 at 73.) After some preliminary

proceedings, the state filed a Motion to Summarily Dismiss Claims in the Rule 32 Petition.

(R-55.) The motion sought the dismissal of all claims except those contained in subsections

I.D. and III.A. of Waldrop's Petition, relating to trial counsel's failure to investigate factual

evidence relevant to the penalty phase of the case. The state moved to dismiss subsections

I.E. and I.F., treating them as stating claims relevant to the guilt phase only, and did not

address the alleged need for additional mental health investigation or psychological testimony

with respect to the penalty phase. (R-55 at 152-54.)

Waldrop opposed the state's motion (R-56 at 168), but the opposition did not

explicitly object to the state's characterization of subsections I.E. and I.F. as relating only to

the guilt phase.[4] The court granted the state's motion in its entirety. (14 R. 194 ("March 18

---

[4] Waldrop did describe the state as "address[ing] a circumscribed version of Mr. Waldrop's allegations" with respect to trial counsel's failure to seek the assistance of a psychologist, social worker,

Order").)  The court noted that the claims brought in subsection I.D., "concerning potential

mitigating evidence that trial counsel did not, but should have presented," were not

dismissed, and "out of an abundance of caution, the Court will conduct an evidentiary

hearing on this claim." (14 R. at 199-200.)  The court dismissed the claim in subsection I.E.,

finding it to be procedurally barred because it had been already addressed on direct appeal

(14 R. 200), and "without merit" because Waldrop had not pursued a mental health defense

at trial.  (15 R. 201.)  The court dismissed the claim in subsection I.F., after discussing only

two aspects of the claim relevant to the guilt phase, and concluding that Waldrop had

established neither the cause nor the prejudice portions of the ineffective assistance of

counsel test.  (15 R. 201-03.)  At no point in the discussion of the reasons for the dismissal

of the claims in subsections I.E and I.F. were penalty phase claims discussed.  After the

issuance of the March 18 Order, only the claims pled in subsections I.D. (relating to failure

to investigate Waldrop's factual background, but not mentioning experts) and III.A. (relating

to failure to present the same evidence in court) remained in the case.  These subsections

were explicitly denominated as relating to the penalty phase only.

Having ruled on the state's motion to dismiss, on August 24, 2005, the court entered

an order setting an evidentiary hearing on the remaining claims for November 21, 2005, and

imposing certain discovery requirements.  (15 R. 271.)  A witness list was required 14 days

before the hearing, and an exhibit list 30 days before the hearing.  (15 R. 271.)  For

_____

and mitigation expert. (R-56 at 173.)  This objection, however, appears to relate to the state's failure to
describe the guilt-phase claims in full, rather than its failure to discuss the penalty-phase claims.

witnesses, the order required "a description of what type of expert the person is alleged to be," a C.V., "the specific claims the witness will give testimony to support," name, address, and telephone number, and "a statement concerning the testimony expected by each witness who is to be subpoenaed by [a party] and an explanation as to why this testimony is material." (15 R. 271.)  The first two requirements pertained only to expert witnesses, while the rest applied to all witnesses.  The state objected to this order on the basis that Alabama law and rules did not require any pre-hearing discovery from the state in a Rule 32 proceeding.  (15 R. 272-75)  Waldrop argued that the original order was correct (15 R. 294), but the court sustained the state's objection.  (15 R. 299.)  Accordingly, only Waldrop was required to proffer discovery prior to the hearing.

Waldrop filed a renewed objection to the discovery order on October 18, 2005, arguing solely that the court had misconstrued Alabama law and that the state should be compelled to provide pre-hearing discovery.  (15 R. 301.)  The record does not reveal that the state court entered a written ruling on this objection.  The state, however, moved on November 10, 2005, to quash subpoenas to and preclude the testimony of Waldrop's witnesses at the upcoming hearing, based on Waldrop's failure to comply with the August 24 discovery order; in the alternative, the state requested that Waldrop be required to provide a more definite statement.  (15 R. 304.)  On November 14 (seven days before the hearing), the court granted the state's motion and required Waldrop to provide the state with a more definite statement as to the expected testimony of his 22 proposed witnesses no later than

8

November 17. (15 R. 310.)  On November 16, Waldrop filed a response to the November 14 order, arguing that, by the terms of the original discovery order, he should be required to provide "a statement concerning the testimony expected" from each witness and its materiality only for the 10 witnesses he had subpoenaed, not all 22. (15 R. 311.)  Waldrop further argued that the factual statements with respect to these ten witnesses were sufficient under the original order. (15 R. 312.)  No further written pleadings or orders were entered before the hearing.

The hearing commenced as scheduled on November 21, 2005. (21 R. 1 (beginning of hearing transcript).)  The state noted that Waldrop had not complied with the November 17 Order to provide a more definite statement. (21 R. 11-12.)  Counsel for Waldrop responded by saying "we did file a response to that," apparently in reference to the November 16 filing restating objections to the state's motion. (21 R. 12.)  Waldrop's counsel then proceeded, essentially, to reargue the merits of the state's motion, explaining why she believed that the August 24 order did not require the level of discovery the state had sought and the court had ordered on November 14.  In response, the court quoted the November 14 order, and observed that "the order of the 14th did" require disclosure with respect to all 22 witnesses. (21 R. 13.)  When Waldrop's counsel again responded with an argument concerning the original August 24 discovery order, the court replied, "[c]ounsel, y'all are playing games with me on this, now." (21 R.14.)  Some additional discussion ensued, and the hearing commenced.  The trial court ultimately refused to allow the testimony of two

9

expert witnesses, a social worker and a psychologist. (22 R. 416-21.) Confusingly, however, the court stated that it was denying the psychologist's testimony on "the grounds that I included in the order of March the 18th of 2005." (22 R. 421.)  According to the court, it relied on "the order in whole" as the basis for its denial.  (22 R. 416.)

On other occasions throughout the hearing, the court barred certain testimony about Waldrop's family life and childhood on the basis that it was hearsay.  Most of it concerned his mother, Shirley Waldrop.  In particular, Waldrop argues that it was erroneous to bar testimony that his mother had "numerous affairs with co-workers, at least one of Bobby's friends, and even relatives, including her husband's cousin" (21 R. 115), that Waldrop was made fun of at school because his mother was having affairs with his classmates' fathers (21 R. 376), that Waldrop's mother got into a fight with another woman at work (21 R. 145), that Waldrop's father and grandfather said that Waldrop's mother left the family to "be with other men" (21 R. 252, 264-65), and that Waldrop's mother "forbade her sister-in-law from telling Shirley's husband when she was caught being intimate with another man."  (21 R. 267.) Waldrop did not dispute that the testimony offered was hearsay, but argued that because the rules of evidence do not apply at the penalty phase of a capital trial, neither should they have been applied at the state habeas hearing.  (Doc. # 30, at 24.)  The trial court, however, found that Alabama case law required that the rules of evidence apply at the Rule 32 hearing.  (21 R. 116-17.)

After the hearing, Waldrop renewed his objection to the court's evidentiary rulings,

including the exclusion of the two experts, as well as certain evidence deemed to be hearsay

and testimony regarding his relationship with his family.  (15 R. 315.)  Waldrop argued that

the March 18 Order, orally cited by the court, had not barred expert testimony related to the

penalty phase of his trial.  (15 R. 327.)  Waldrop also introduced proffers from the witnesses

prevented from testifying, including the two experts.  (15 R. 335; 351.)  The court did not

reopen the hearing, and ultimately denied Waldrop all relief.  (18 R. 845.)

B.  **Alabama Court of Criminal Appeals Decision**

Waldrop timely sought review of the trial court's denial of his petition in the Alabama

Court of Criminal Appeals.  *Waldrop III*, 987 So. 2d 1186.  It is that decision on which this

court must ultimately focus its review.  With respect to Waldrop's complaints that hearsay

evidence was not permitted, the court first concluded that the trial court had been correct to

bar the evidence, because the rules of evidence apply to Rule 32 proceedings, noting that it

had addressed the "identical issue" in prior cases.  *Id*. at 1190 (citing *Hunt v. State*, 940 So.

2d 1041 (Ala. Crim. App. 2005)).  Second, it found that any hypothetical error would have

been harmless, because nearly all the testimony in question had actually been spoken before

the state objected to it, and the state made no motion to strike after having its hearsay

objection granted.  Thus, according to the Court of Criminal Appeals, the disputed testimony

remained in the record and could have been considered by the trial court judge.  *Id*. at 1191.

With respect to the testimony of the psychologist and social worker, the court based its affirmance of the exclusion on three alternative grounds. First, the court held that there was no material issue of law or fact created by the experts' profferred testimony, because Waldrop's trial counsel had made a strategic decision not to pursue a mental defect defense, and the specifics of what a psychologist or social worker would have testified to had such a defense been made were therefore irrelevant. *Id*. at 1193. Second, the court held the social worker's testimony would have been "cumulative of other evidence" presented at the hearing. *Id*. Third, the court found "the record shows that Waldrop failed to comply with the court's order to submit a statement of the experts' expected testimony." *Id*. Because "Waldrop failed to comply with [the November 16] order . . . the court did not abuse its discretion in excluding the testimony of [the experts]." *Id*.

## C. Entitlement to a Federal Evidentiary Hearing

### 1. Exclusion of the Expert Witnesses

Waldrop claims that he was diligent in attempting to develop the factual basis for his claim, but was prevented from doing so by the state habeas trial court's "arbitrary and erroneous rulings," which kept him from introducing the relevant expert and other testimony. (Doc. # 30, at 2); *see Ward*, 592 F.3d at 1160. As his reply brief clarifies, Waldrop's contention depends on the state court's exclusion of the expert testimony having been based on the March 18 Order. (Doc. # 32, at 12.) It also depends on characterizing the Alabama Court of Criminal Appeals' affirmance as having been entirely based on the March 18 Order.

First, even if the court were to accept Waldrop's view on this point, it would not be, as he contends, dispositive of his motion for a hearing, given the confusion regarding the initial pleading of his claims.  Waldrop did not object to the March 18 Order's explicit dismissal of the claims in subsections I.E. and I.F. of his Petition.  Even if the dismissal was predicated on a misunderstanding by the state trial court as to whether those subsections contained both guilt- and penalty-phase claims, Waldrop entirely failed to seek clarification of the March 18 Order dismissing those claims – the only claims that sought expert testimony from a psychologist and social worker.  The March 18 Order granted an evidentiary hearing as to subsection I.D., which contained a lengthy statement of trial counsel's alleged investigative failures, but did not mention anything concerning mental health experts.  It does not show "due diligence" in the pursuit of a "factual basis" to fail for eight months to even raise the issue of the March 18 Order's meaning.  It is unclear whether Waldrop alleged any error on this point before the Alabama Court of Criminal Appeals.

Second, the court does not agree with Waldrop's view that the only basis for denial of the motion to admit expert testimony was the March 18 Order.  Indeed, given the ruling of the Alabama Court of Criminal Appeals, this court *cannot* accept that view.  The Court of Criminal Appeals offered three grounds for affirming the exclusion of expert testimony, although one applied only to the social worker's testimony.  The two remaining grounds were the failure of the proffered testimony to create a genuine issue of law or fact, and Waldrop's failure to obey the discovery order. *Waldrop III*, 987 So. 2d at 1193.  Waldrop characterizes

the second holding as "dicta" (Doc. # 32 at 11 n.10), but a holding in the alternative is not dicta and remains a binding holding of the court. *United States v. Bueno*, 585 F.3d 847, 851 (5th Cir. 2009); *McClellan v. Miss. Power & Light Co.*, 545 F.2d 919, 925 n.21 (5th Cir. 1977) ("It has long been settled that *all* alternative rationales for a given result have precedential value.").

Moreover, because an appellate court may typically affirm "on any ground that the law and the record permit," it is not difficult to understand why the Court of Criminal Appeals would have reached such an alternative holding. *See Thigpen v. Roberts*, 468 U.S. 27, 30 (1984). The state habeas record is more than sufficient to conclude that Waldrop's counsel simply failed to obey the state trial court's November 14 Order, instead continuing to rely on arguments concerning the proper interpretation of the original August 24 discovery Order. In doing so, counsel took a risk of the state trial court enforcing its order, a risk that is rarely wise. In his briefing before this court, Waldrop nowhere explains how he would be entitled to relief from the exclusion of his experts on this basis, instead preferring to argue that the sole basis for the Court of Criminal Appeals' affirmance was the March 18 Order. But this court cannot ignore, as Waldrop asks, the Court of Criminal Appeals' opinion, and instead undertake a parsing of the voluminous state habeas trial court record for purported logical inconsistencies. It is the final reasoned state court decision that is relevant. *Delgadillo*, 527 F.3d at 925.

Because Waldrop did not exercise due diligence in developing the factual record regarding the testimony of the psychologist and the social worker, he is not entitled to present their testimony at a federal evidentiary hearing.

*2. Hearsay Testimony*

Waldrop argues that the cases relied on by the Court of Criminal Appeals in affirming the trial court's relevant rulings were not controlling, as the primary one involved whether a petitioner's lawyer, rather than family members, could give hearsay testimony about mitigating factors. *Hunt*, 940 So. 2d at 1051. He complains that the Court of Criminal Appeals failed to address his argument that *Hunt* was distinguishable. (Doc. # 30, at 27.) This argument lacks merit. First, "state courts are the final arbiters of state law." *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997). This court lacks the authority to reevaluate the weight of the state precedents on which the Court of Criminal Appeals relied. It is true that in the related context of a claim being dismissed on an "adequate and independent state ground[]," it is necessary that a state procedural rule be "firmly established and regularly followed and not applied 'in an arbitrary or unprecedented fashion.'" *Ward*, 592 F.3d at 1156-57 (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)). But even assuming that standard applies to the determination here, there has been no showing of an arbitrary or unprecedented application. The state court precedents held that hearsay was inadmissible in a Rule 32 hearing. They were not based on the fact that the witness making the hearsay statements was a lawyer. *E.g.*, *Hunt*, 940 So. 2d at 1050-51. Applying a legal principle to

factual variations is not arbitrary or unprecedented.  Second, even if Waldrop is correct that

it was error to exclude the testimony, he entirely fails to address the Court of Criminal

Appeals' alternative holding that any error was harmless because the testimony was not

stricken from the record.  Again, this court must give deference to the conclusions in the last

reasoned state court opinion; it cannot ignore them in favor of its own interpretation of what

happened in the state trial court.

Third, Waldrop suggests that even absent state-law error in the evidentiary

determinations, he had a constitutional right to present hearsay as mitigating evidence at the

Rule 32 hearing.  (Doc. # 32, at 17.)  It is unclear whether this argument was even presented

to the state courts.  Regardless, Waldrop ignores the standard of review imposed by section

2254(d) for state courts' determinations of federal legal issues.  There is no case law from

the Supreme Court of the United States indicating the existence of such a right, and so the

Court of Criminal Appeals did not act "contrary to," or unreasonably apply, any "clearly

established Federal law, as determined by the Supreme Court of the United States."

§ 2254(d)(1).

Fourth, Waldrop argues that this court has broad discretion to conduct an evidentiary

hearing as part of its "plenary power of inquiry" on federal habeas.  (Doc. # 32, at 17.)  The

primary Eleventh Circuit precedent relied on by Waldrop found that a petitioner was entitled

to a federal evidentiary hearing when the state court had barred him from presenting evidence

that the prosecution at his trial had committed a *Brady* violation; specifically, the petitioner

Case 3:08-cv-00515-WKW-TFM  Document 39  Filed 07/02/10  Page 17 of 18

sought to introduce the evidence that had been withheld. *Moore v. Kemp*, 809 F.2d 702, 718-30 (11th Cir. 1987).[5]  Such a case is not comparable to Waldrop's, where he was prevented from introducing evidence by a valid state evidentiary rule that has not been shown to be unconstitutional.  While Waldrop cites *Moore*'s statement that the petitioner was entitled to a hearing because he was "denied . . . the opportunity to prove his claim," he neglects to note the "denial" was of "petitioner's counsel['s] access to that information" – that is, the *Brady* violation itself constituted the denial.  809 F.2d at 730.  *Moore* did not announce a standard that a federal court may or should conduct an evidentiary hearing anytime some arguably relevant evidence exists that was not placed into the state court record for any reason.

Further, since *Moore* was decided, Congress adopted AEDPA, which included the provisions of subsections 2254(d) and (e) governing the granting of evidentiary hearings. Under those subsections, this court plainly does not have unlimited power to conduct such hearings, but must find that counsel was diligent in developing the relevant factual issue in state court.  *Ward*, 592 F.3d at 1158-59; *see Williams*, 529 U.S. at 437 ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.").

Finally, to the extent this court is left with residual discretion to conduct an evidentiary hearing in this case despite the foregoing, it declines to do so.  The hearsay evidence concerning Waldrop's family appears to be cumulative of testimony regarding

---

[5] Indeed, *Brady*-related claims are apparently often the basis for motions for evidentiary hearings in federal court.  *See, e.g.*, *Breedlove*, 279 F.3d at 958.

Waldrop's family that was introduced at trial, and is thus unlikely to alter the outcome of these proceedings. *See Valle*, 459 F.3d at 1216 (evidentiary hearings need not be granted for evidence that will not affect the outcome of the case).

## IV.  CONCLUSION

For the foregoing reasons, it is ORDERED that the motion to hold an evidentiary hearing (Doc. # 30) is DENIED.  An order setting a briefing schedule for the remainder of the case will follow.

DONE this 2nd day of July, 2010.

/s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE
